Our fourth case this morning is United States v. McGuire. And as we're changing up counsel here, let me say for the other lawyers in the courtroom, the next four cases have some overlapping issues related to sentencing law. So if you'd like to stick around after your case is called and you're done arguing to hear the follow-on arguments, that might be advisable. Thank you, Your Honor. If it pleases the Court, the question before the Court today is whether or not the district court plainly erred by applying the career offender guidelines and calculating Mr. McGuire's guideline range based on a prior conviction of a violent felony under the guideline residual clause. Since the Supreme Court intervening decision in Johnson v. United States holds the identical clause to be void for vagueness under the Constitution. Your Honor, in determining whether or not the appellant was a career offender, the district court considered two prior offenses which the court found to be violent felonies and sentenced them to a high-end guideline term of 188 months. The appellant would not have been a career offender unless we looked at the residual clause. While the appellant's case was still on direct appeal, the United States Supreme Court decided in Johnson v. United States that the nearly identical residual clause in the Armed Career Criminal Act was void for vagueness. The offense that my client was found to be a violent felony on was a fleeing case, Your Honor, under Illinois law, which we know the Seventh Circuit has held historically to be a violent crime. In light of Johnson, we believe that the case should be remanded for resentencing. We understand that the district court may impose the same sentence and may not, but in light of the recent ruling in Molina v. Martinez, where the Supreme Court found that we need to start with the right guidelines and the guidelines are basically the cornerstone for sentencing, we believe a full remand is necessary. Prior to Molina, we could have said that you wanted a limited remand, but that case, Your Honor, they looked at whether or not the guidelines themselves, while correct, the district judges understood they could send it outside the guidelines, either above or below. Mr. Cable, the guidelines are advisory, right? Correct, Your Honor. Has the Supreme Court ever applied the vagueness standard that it applies to statutory mandates to advisory guidelines? Not that I know about, Your Honor. We've said in Tickner that that vagueness doctrine does not apply, correct? Correct, Your Honor. But in Tickner, excuse me, in Pew, which outdated, which just came out, there's no vagueness, excuse me, for challenging the guidelines. Pew was the ex post facto case, right? Yeah, ex post facto. Then we've got Irizarry, right? Right. Which says the district judge doesn't even have to give notice that she's contemplating a non-guideline sentence. That's correct, Your Honor. Right? She can take advice. And I've got to say, I mean, I was looking through the pre-sentence report in this case, and this guy qualifies, I mean, the number of felony convictions and violent misdemeanor convictions that earned zero criminal history points were extraordinary here. That's correct, Your Honor. Right? We've got assault, aggravated battery, battery, battery, aggravated battery, robbery with a gun, grand theft auto, escape, illegal possession of a firearm twice, battery, aggravated assault of a police officer, and two domestic battery convictions, none of which are counted in this calculation, right? In fact, Your Honor, when you looked at his guideline range that I calculated without being a career offender, the guideline range would have been 63 to 78 months. Two and a half times he got more than that when he got sentenced to 188 months. The question becomes, would the judge have gave him the 188 months? Would the judge have given him something in the middle? Or 240. Or 240. I don't know. And I don't believe I can substitute a guess of what Judge Rosenstengel would do unless we get back in front of her on a full remand. She did say this was the worst criminal history she'd ever seen, right? That's correct, Your Honor. And she wondered why the government had not asked for a statutory maximum. That's correct. But she did not ask. She did not vary upward. She varied to the top end of the range. Let me ask you how your vagueness theory, Mr. Gable, would apply to some other provisions in the guidelines. For example, you're familiar, I know, with supervisory role enhancements. Yes. And our court has struggled with those. We've got multi-factor tests and so on. Why isn't that unconstitutionally vague, too, under this theory? Your Honor, those could be, maybe. It depends on the circumstances they're applied at. Right now, the biggest one that we keep on hearing is no one gets a reduction because of a limited role. They always get the standard. Well, vagueness probably doesn't apply to mitigating factors, right? Or maybe you think it does. I don't know. You know, the argument should be able to be made both ways, obviously. And the trouble is that when you're talking about supervision, there's usually some hard factors. Usually you're looking after one or more individuals. You're either part of the chain of the flow of drugs. There's something that you can hang your hat on. How about the guidelines that provide for upward enhancements for sadistic, masochistic, cruel, or unusually heinous crimes? Wouldn't that pose some vagueness problems, too? The trouble with those, usually they're in child pornography cases, Your Honor, a lot of them. Most often, but it applies broadly, right? It could apply to a bank robbery. It could apply to a kidnapping. A lot of those are being looked at by the Guideline Commission right now in the child porn cases. And the reason why is because they're applied universally and not selectively. And you start getting a case where everything's— Let me go back. I understand they may want to relook at those. But let me go back to my question about applying constitutional vagueness standards to advisory guidelines. Because I would think that your theory would apply to all of those kinds of somewhat open-ended standards like cruel, heinous, supervisory role, substantial impacts, victim impacts, et cetera. I think most of those you do have notice on, Your Honor. Notice of what? In the fact that I'm talking about due process type notice where you are aware that they're out there, or you should be. You should be aware if you kidnap someone while you're doing a bank robbery that you're going to be enhanced. You should be aware if you shoot somebody during a bank robbery, you're going to be enhanced. I'm not saying that shooting is vague. But how about sadistic, masochistic, heinous, cruel, supervisory role, and so on? I think those are vague. And the reason they're vague is because— So they'd be unconstitutional, too, under your theory. Under my theory, yes, sir. What is your— Here's my whole problem here. I just do not understand why a limited remand wouldn't be reasonable. In other words, if the district court judge says she would not have given the same sentence had she known that the residual clause was unconstitutional, then Mr. McGuire gets a full reconsideration on resentencing. But if she states that she would have given the same sentence anyway, why do we waste judicial resources having her repeat the entire sentencing? I mean, how is this different from Palladino, you know, where we determined that a limited remand is appropriate? In Palladino, Your Honor, the guidelines were correct. The guidelines—that's after Booker. The guidelines were the correct guidelines. So you're no longer looking whether or not the guidelines are incorrect. You're looking at whether or not the range—they're going to punish within the range. That's the difference between the two, in my mind. I think you'd actually save judicial resources by doing the full remand first. I'm sorry, I didn't hear that. I think you'd actually save judicial resources by doing the full remand, Your Honor. I noticed that my yellow light's on, Your Honor. That's fine. You can reserve the rest of your time. Thank you, Your Honor. Mr. Pierce? May it please the Court, James Pierce for the United States. As Judge Hamilton noted, the defendant, Patrick McGuire, has essentially spent his entire adult life committing crime. And the 15-and-a-half-year sentence that he received, though not a career offender under the government's view, was within the statutory maximum and not plain error because there's no reasonable probability— Well, you've conceded and, in fact, agree that it was plain error. It's just not reversible because you want a limited remand. So your argument goes solely to the remedy, not the plain error standard of review. That's correct. You agree that this error occurred, it was plain, that Tickner ought to be overruled based on Pew, and that the only question is the nature and scope of the remand. So I find your argument a little bit—there's a disconnect there. And I should be more precise when I say not plain error. Obviously, we know that plain error has these four steps. We absolutely agree—we've made the arguments already to this Court in Hurlburt and Gillespie— that Johnson should apply to the residual clause of the guidelines. That satisfies prongs one and two. We are making an argument, just to make sure our belief is not as clear as it could be, that there is not a reasonable probability that he would receive a different sentence. Right, but we've already rejected the application of Palladino to a guidelines miscalculation error in many cases. So you can't really have it both ways. You can't say that there's an error, it was plain, it affects substantial rights, but it doesn't require reversal. It requires only a limited remand. And that's why I want to be clear. On step three, we are not saying that here it affects substantial rights. But we've already rejected that in many cases in declaring the Palladino procedure improper when there's a guidelines miscalculation. We've said that a guidelines miscalculation does affect the defendant's rights, substantial rights. And that's why I am a bit confused about the position that you're taking here. We've categorically foreclosed application of Palladino to a guidelines miscalculation. Well, that seems to me to not correctly apply than the third prong of plain error. And certainly Molina-Martinez. Williams, Adams, others. Well, the Molina-Martinez case, which, you know, a recent case of the Supreme Court in which it specifically focuses on plain error in the context of a guidelines miscalculation. And there the Supreme Court says quite clearly that the fact of a guidelines error does not necessarily mean that the third prong of the plain error test is satisfied. It came pretty close. It did come close, Judge Hamilton. And it said in ordinary cases, in your usual case. And the government is by and large in these cases conceding that. This is not the ordinary case. And that's why our frontline position here is looking at the district court's comments. This is not a case that is appropriate for a remand. And then our follow-up position is if the court disagrees, then, as Judge Roedner suggested, a limited remand to assess whether the judge would have given that same 15-and-a-half-year, 188-month sentence. Mr. Pierce, I wasn't on the or am not on the Hurlburt and was it Gillespie? I believe that's correct. Were you involved in? I was not, Your Honor. I've listened to the argument. I'm trying to understand why the government is conceding that the same standard for vagueness that applies to a statutory mandate applies to the advice that the Sentencing Commission gives a district judge. Certainly, Your Honor. And that's been an issue much discussed. The government has taken this position consistently in courts of appeals. Essentially three reasons that I would offer to the court. The first is the type of risk assessment that Justice Scalia's majority opinion in Johnson discusses is the same assessment and faces the same problems of how much risk is necessary to determine what is a violent felony, how do you measure risk in any event. That's going to be the same problem if you're looking at a particular state statute with respect to ACCA or the career offender. So that's sort of the practical problem. Now, in applying guidelines, the court is free to look at the actual facts of the crime, right? Well, it is under 3553A, but not under the categorical approach to determining predicate felonies. But that's the whole point. I mean, I understand this concession pattern across the country. Why don't you tell me what your other two reasons are? Certainly, Your Honor. So the other two points in Johnson that the majority opinion relies on and discussing sort of what the vagueness argument does are the questions of the issues of notice and of arbitrary enforcement. Now, notice there is indeed the Irizarry case, as Your Honor discussed earlier, that says a district court need not give any notice for 3553A variances. Our position, it was somewhat alluded to by Mr. Gabel, is the guidelines are different. The guidelines aren't the 3553A discretionary interpretation that a court can do. The guidelines are legal calculation. In fact, it refers back in some respects to the discussion we had, Judge Sykes. If the district court makes a guidelines error, that's legal error. And so that is in itself different from the kind of a little bit more mushy discretionary analysis that happens under 3553A. But it's about advice. It's true. I mean, I'm just baffled by this position because since Booker came out, the Justice Department under two different administrations has been trying to undermine it by basically trying to give the guidelines as much legal force as possible. The government, for example, tried to confess error in Demery in the early stages of those debates. And in this kind of a case where we've got a fellow who has a stunningly violent criminal history, the notion that he does not qualify as a career offender is very difficult for me to swallow. And the idea that the district – I would say any sentence below statutory maximum here is a break for Mr. Little. As the district court seemed to recognize itself in some respects. To get back there, to try to continue answering your question, Mr. Gabel submitted a letter with some additional authorities, including the Sixth Circuit's recent opinion in the Powlack. I'm not sure exactly how it's pronounced. That also sketches out arguments that are essentially the arguments that the government feels are the correct ones. On notice, to sort of continue that through, the Powlack decision talks about this ex-ante notice, about the notice of what kind of rules you're breaking versus adversarial notice. So I'm trying to picture Mr. McGuire. He's trying to decide whether to commit the crime of conviction here. And he consults a probation officer and asks for kind of a dry run of his criminal history. Getting a pre-plea, for example. Yeah. And we go through, by my count, 32 paragraphs of the pre-sentence report with all of these violent crimes. Not all of them are violent, but many, many of them are. That's correct. All of which don't count. And so he says, I'm in the clear, and so I can go ahead, and I'm not going to get sentenced as a career offender here. This makes no sense to me. I agree that that's a pretty odd way of imagining sort of notice in this particular instance. But nonetheless, our position. If the concern is about arbitrary enforcement, given the discretion a district judge has under 3553A, I don't see how there's any meaningful protection against so-called arbitrary enforcement, although it would be not at all arbitrary to give Mr. McGuire a statutory maximum sentence here. Again, and this is why our position is on the third prong, having conceded already the question of the application of Johnson to the guidelines, that the particular sentence he got in this case was correct. But we've made the arguments, again, before this court and other courts. Again, I refer the court to Powlak as a particularly succinct exposition of our views. What is the circuit count now on other circuits applying Johnson to the career offender guideline? Certainly. The Sixth Circuit, and Powlak, as I mentioned, the Eighth Circuit, in a per curiam opinion, USP Taylor has said the guidelines are subject to a vagueness challenge, but curiously actually remanded that to the district court to determine whether the career offender residual clause was vague. The Tenth Circuit in the Madrid case has also held that the guidelines, that Johnson is applicable to the guidelines through a vagueness challenge. The Eleventh Circuit in Matchett has, in a published opinion, disagreed with the government's position, essentially advancing some of the arguments that you have referred to, Judge Hamilton. And I believe the Third Circuit in Townsend, an unpublished opinion, has also applied the guidelines. And the First Circuit in an unpublished decision? The First Circuit? Why isn't anybody publishing? I'm not aware, Judge Sykes, of the First Circuit. I think the Second Circuit has also made reference in an unpublished decision. But the published ones are the ones I've recited. So could you address some of my concerns, Mr. Pierce, about if you're going to apply vagueness standards to the guideline for career offenders, how does that logic wind up working with other aggravating factors under the guidelines, like supervisory role, like heinous, sadistic, masochistic, cruel conduct, et cetera? Sure, and I see my time is up, so I assume I can. Please. Thank you. I think it's important to start that discussion through the Johnson decision because what Johnson said about the residual clause is one of the driving factors was the Supreme Court's own struggle to make sense of that, and not only the Supreme Court but, of course, many courts of appeals. Now, certainly there are differing decisions on some of these other enhancements. I would disagree with Mr. Gabel. I think that this would only have to apply to aggravating factors. Vagueness works in favor of a defendant. I don't think that this would cut when the mitigating factor is at issue. But I think that there are those provisions. I mean, they'd have to be looked at, obviously, on a case-by-case basis. I think that there is a bit more. Has the government taken that prospect into account in deciding to concede the Johnson issue? If the guidelines are subject to a vagueness challenge, as we concede as to the residual clause, we haven't specifically articulated a position as to others. It would be hard to see a logical position why they wouldn't. Now, of course, saying nothing on the merits, right, I think we would get up and very forcefully argue as to all of these that there is sufficient language courts interpret. That's what they do. Heinous is clear enough to give fair notice and avoid arbitrary application. Again, I think that one would have to look at case law, looking at interpreting some of these provisions, and I think we would be fairly forceful in arguing that I can't think of one that resembles anything approaching the residual clause's history of disagreement and confusion. So well past my time. So thank you very much. Thank you. How much time? You have one minute. I'm going to close real quick. I just ask the court to follow their decision last week in Tate and remand it for sentencing under the correct guidelines. All right. Thank you. Thank you. The case is taken under advisement.